United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MARK BURGESS, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>HP, INC., et al.,<br><br>   Defendants. | Case No. 16-CV-04784-LHK<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 27 |

Plaintiffs Mark Burgess, Rhonda Johnson, Larry Lopez, Holger Meyer, and Alan Munns (collectively "Plaintiffs") sued Fidelity Management Trust Company ("Fidelity"), HP, Inc. ("HP"), United Airlines ("United"), and 50 John Does (collectively "Defendants") for violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Before the Court is Fidelity's Motion to Transfer Venue, ECF No. 27 ("Transfer Mot."), in which HP and United have joined. Having considered the parties' briefing, the relevant law, and the record in the instant case, the Court GRANTS Fidelity's motion to transfer venue.

## I. BACKGROUND

### A. Factual Background

The instant case is a class action concerning the management of 401(k) "employee benefit plan[s]" regulated under ERISA. 29 U.S.C. § 1002(3). Plaintiffs are employee participants in the 401(k) ERISA plans administered by their employers, HP and United. Specifically, Plaintiffs

1

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

Mark Burgess, Holger Meyer, and Alan Munns are allegedly employees of HP and are participants in the 401(k) plan administered by HP (the "HP Plan"). FAC ¶ 20. Plaintiffs Rhonda Johnson and Larry Lopez are allegedly employees of United and participants in the 401(k) plan administered by United (the "United Plan"). *Id.* ¶ 21.

These 401(k) plans provide retirement benefits to employees "based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses . . . which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Thus, unlike "traditional" pension plans, "the amount of retirement savings that participants . . . receive at retirement is simply a matter of how much is in their individual accounts at the time—contributions, less fees, plus any investment returns." FAC ¶ 4. The employee plan participants contribute a portion of their pre-tax income to the 401(k) for investment in "the available investment options offered in those retirement plans." *Id.* ¶ 8. Those investment options are usually mutual funds. *Id.*

Plaintiff alleges that Fidelity violated its duties under ERISA as a "trustee" for the HP Plan, the United Plan, and, as relevant to the class action allegations, for all other plans for which Fidelity acted as trustee during the class period. Plaintiff alleges that HP and United, as administrators of the Plans "failed to undertake a reasonably thorough investigation of Fidelity's actions." The Court first describes the allegations against Fidelity, then describes the allegations against HP and United, and finally describes the class action allegations.

### 1. Allegations Against Fidelity

In the HP Plan and the United Plan, Fidelity has been appointed as "trustee." *Id.* ¶ 34. Fidelity was only trustee of the HP Plan until January 2, 2013. *Id.* ¶ 33. Under the "Trust Agreement" between HP and Fidelity (and in the allegedly identical agreement between United and Fidelity), Fidelity is the trustee of a trust consisting of "an initial contribution of money or other property, all investments made therewith and all proceeds thereof, and all earnings and profits thereof, less payments that are made by the trustee as provided herein." *Id.* As trustee, Fidelity manages the contributions and withdrawals of money by 401(k) plan participants and

2

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

facilitates the purchase and sale of securities in the investment options offered by the plans for each plan participant. *Id.*; *see also id.* ¶ 37 ("Fidelity's services include . . . "obtaining new contributions, allocating and reallocating contributions among different investment sources, [and] liquidating investments and distributing benefits in the form of cash withdrawals or rollovers.").

Plaintiff alleges that Fidelity "diverted for its own use cash assets Fidelity received as trustee for the benefit of [the 401(k) plans], reinvested or otherwise used that money for its own benefit, and kept the investment proceeds." *Id.* ¶ 1. The cash assets Fidelity receives come from multiple sources, including (1) cash contributions of plan participants, (2) matching contributions from employers (3) the sale or redemption of investments on behalf of plan participants, (4) a plan participant's repayment of loans obtained by "borrowing against" their 401(k), and (5) interest earned on the cash. *Id.* ¶ 2. The cash assets held by Fidelity are generally referred to as "float," and the income from the investment proceeds as "float income." *See id.* ¶ 1 (referring to the investment proceeds as "float income"). Plaintiff alleges that "Fidelity diverted the cash from the trusts, deposited the cash into accounts that it controlled, and used the cash for its own benefit" and "shared none of those benefits with the plans or their participants." *Id.* ¶ 2.

Plaintiff alleges the following with respect to the sale or redemption of investments: "When investments are sold—for example, to satisfy withdrawals, rollovers, or to fund participant loans—Fidelity liquidates the investments and records the proceeds as cash assets of the Plans and their trusts. Thus the proceeds from the sales of the investments are paid to Fidelity as trustee for the benefit of the HP Plan, and then distributed to the participants according to the terms of the HP Plan." *Id.* ¶ 36. "[P]rior to the cash being actually transferred to the participants, [] Fidelity diverts the cash to its own account and for its own benefit." *Id.* The FAC does not provide a representative example of how other cash transactions result in the "diver[sion of] the cash from the trusts." *Id.* ¶ 2. The FAC does allege, however, that Fidelity failed to disclose and concealed its practices involving float from the plans and the participants in the plans. *Id.* ¶ 61.

### 2. Allegations Against HP and United

Plaintiff alleges that HP and United were fiduciaries with respect to the plans that they

3

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

administered, the HP Plan and the United Plan, respectively. *Id.* ¶ 75. The FAC alleges that HP and United "failed to undertake a reasonably thorough investigation of Fidelity's actions and compensation with respect to [Fidelity's] management of the plans and control over assets of the Plans." *Id.* ¶ 77. Specifically, HP and United allegedly "failed to obtain sufficient information from Fidelity to appropriately assess the amount of Fidelity's compensation in relation to the services being provided." *Id.* ¶ 78.

Plaintiffs allege that HP and United can be held liable for Fidelity's actions as co-fiduciaries because their "imprudence" enabled Fidelity to breach its fiduciary duties. *Id.* ¶ 79. Moreover, Plaintiffs allege that HP and United's failure to investigate sufficiently allowed Fidelity to engage in a prohibited "party-in-interest" transaction. *Id.* ¶ 84.

### 3. Class Action Allegations

Plaintiffs seek to certify two nationwide classes: the "Float Plans Class" and the "HP and [United] Plan Participant Class." The Float Plans Class is defined as follows:

> All defined contribution individual account plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), for which Fidelity Management Trust Company or its affiliate served as Trustee and/or recordkeeper and for which it had, or for which it exercised, authority to (A) withdraw assets from the Plan's Trust in connection with the investment of Plan assets, prior to the settlement date with respect to such investments; or (B) prepare and deliver distribution, withdrawal and/or loan checks and in connection therewith to withdraw funds from the Plan's trust and deposit those funds into an account or accounts held in the name of Fidelity or its affiliate or maintained by or for the use of Fidelity or its affiliate, at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Fidelity has concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Fidelity's breach, the first date on which Fidelity commenced services as Trustee, and in either case, through the date of judgment (the "Float Plans Class Period").

*Id.* ¶ 86. Thus, Plaintiffs seek to certify a class of all plans similar to the HP and United Plan for which Fidelity acted as the trustee.

The HP and United Plan Participant Class includes individual participants of the HP Plan and the United Plan. The FAC defines the HP and United Plan Participant Class as follows:

> All individuals who were participants in either the HP Plan or the UAL Plans while Fidelity Management Trust Company or its affiliate served as Trustee

4

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

and/or recordkeeper and for which it had, or for which it exercised, authority to: (A) withdraw assets from the HP and UAL Plans' Trusts in connection with the investment of Plan assets, prior to the settlement date with respect to such investments; or (B), prepare and deliver to participants distribution, withdrawal and/or loan checks and in connection therewith to withdraw funds from the Plan's trust and in either case to deposit those funds into an account or accounts held in the name of Fidelity or its affiliate or maintained by or for the use of Fidelity or its affiliate, at any time from the earlier of (i) six years before the filing of this action, or (ii), in the event the Court determines that Fidelity has concealed the facts and circumstances that would have apprised Plaintiffs and the Class of the existence of Fidelity's breach, the first date on which Fidelity commenced services as Trustee, and in either case, through the date of judgment[.]

*Id.*

### B. Procedural History

On August 18, 2016, Plaintiffs filed the instant suit. ECF No. 1. On September 22, 2016, Plaintiffs filed the FAC. ECF No. 16 ("FAC"). In the FAC, Plaintiffs allege the following ERISA causes of action against Fidelity: (1) breach of fiduciary duties under 29 U.S.C. § 1104(a), (2) engagement in prohibited transactions under 29 U.S.C. § 1104(a), and (3) failure to disclose and concealment under 29 U.S.C. § 1104. FAC ¶¶ 102–15. Plaintiffs allege the following ERISA causes of action against HP and United: (1) breach of fiduciary duty under 29 U.S.C. § 1104(a) and Breach of co-fiduciary duty under 29 U.S.C. § 1105, and (2) failure to prevent prohibited transactions under 29 U.S.C. § 1104(a) and (b). *Id.* ¶¶ 116–126.

On November 2, 2016, Fidelity filed a Motion to Transfer Venue. ECF No. 27 ("Transfer Mot."). Also on November 2, 2016, HP and United each filed notices of joinder with Fidelity's motion to transfer venue. ECF No. 31 ("HP Joinder"); ECF No. 34 ("United Joinder"). On December 16, 2016, Plaintiffs filed an opposition, ECF No. 58 ("Transfer Opp'n), and on January 13, 2017, Fidelity filed a reply, ECF No. 62 ("Transfer Reply").

On November 2, 2016, Fidelity, HP, and United each filed a motion to dismiss. ECF No. 28 ("Fidelity MTD"); ECF No. 32 ("HP MTD"); ECF No. 36 ("United MTD"). On December 16, 2016, Plaintiffs filed an opposition to each motion to dismiss. ECF No. 61 ("Fidelity MTD Opp'n"); ECF No. 60 ("HP Opp'n"); ECF No. 59 ("United Opp'n"). On January 13, 2017, Fidelity, HP, and United each filed a reply. ECF No. 63 ("Fidelity MTD Reply"); ECF No. 64

5
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

1 ("HP Reply"); ECF No. 65 ("United Reply").

2 Also on November 2, 2016, Fidelity filed a request for judicial notice in support of its
3 motion to dismiss the FAC. ECF No. 30.

**II. DISCUSSION**

As discussed above, Fidelity has filed a motion to transfer venue, and HP and United have joined in that motion. Below, the Court finds that a transfer of venue is warranted. Therefore, the Court need not reach Fidelity's, HP's, or United's motions to dismiss or Fidelity's request for judicial notice in support of Fidelity's motion to dismiss.

The Court first addresses the standard for motions to transfer in ERISA cases, and then discusses how that standard applies in the instant case.

**A. Motion to Transfer Standards in ERISA Cases**

Federal venue is governed by statute. *See Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 960 (C.D. Cal. 2005) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 181 (1979)). ERISA's venue provisions permit a plaintiff to bring a federal action where: "(1) a plan is administered, or (2) a breach took place, or (3) a defendant resides or (4) a defendant may be found." *Varsic v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 607 F.2d 245, 248 (9th Cir. 1979) (citing 29 U.S.C. § 1132(e)(2)). Through these provisions, "Congress intended to give ERISA plaintiffs an expansive range of venue locations." *Bohara*, 390 F. Supp. 2d at 960 (citing *Varsic*, 607 F.2d at 248).

A motion to transfer venue from one district to another is governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.*

6
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

(quoting *Cont'l Grain Co. v. The F.B.L.-585*, 364 U.S. 19, 27 (1960)).

When determining whether a transfer is proper, a court must employ a two-step analysis. A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("In determining whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district.") (internal quotation marks and citations omitted). Once the party seeking transfer has made this showing, district courts have discretion to consider motions to change venue based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

Pursuant to Section 1404(a), a court should consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. 28 U.S.C. § 1404(a). As the Ninth Circuit explained in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000), additional factors that a court may consider include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498–99. "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne*, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc.*, 487 U.S. at 29; S*parling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988)).

**B.     Analysis**

The Court first discusses whether this suit could have been brought in the District of Massachusetts, then discusses whether Plaintiff's choice of forum deserves deference, and finally discusses whether the balance of convenience and interest of justice weigh in favor of transfer.

7
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

### 1. Ability to Bring Suit in the District of Massachusetts

As discussed above, the first step in analyzing a motion to transfer venue is to determine "whether the action initially could have been commenced" in the district into which the case is to be transferred. *Hatch*, 758 F.2d at 414. Here, Plaintiffs do not argue that venue would be improper or that personal jurisdiction would be lacking in the District of Massachusetts.

With respect to personal jurisdiction, ERISA provides for nationwide service of process. 29 U.S.C. § 1132 ("[P]rocess may be served in any [] district where a defendant resides or may be found."). The Ninth Circuit has held that when a federal statute provides for nationwide service of process, the "question becomes whether the party has sufficient contacts with the United States not any particular state." *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) (citation omitted). A company that is headquartered in the United States satisfies this requirement. *Id.* Here, HP is headquartered in Palo Alto, California; United is headquartered in Chicago, Illinois; and Fidelity is headquartered in Boston, Massachusetts. Thus, these companies have sufficient contact with the United States for personal jurisdiction to be proper in any district court.

With respect to venue, ERISA provides that venue is proper where "(1) a plan is administered, or (2) a breach took place, or (3) a defendant resides or (4) a defendant may be found." *Varsic*, 607 F.2d at 248 (citing 29 U.S.C. § 1132(e)(2)). "The ERISA venue statute specifies that only 'a defendant' need satisfy the statute for a proposed venue to be appropriate." *Virts v. Prudential Life Ins. Co. of Am.*, 950 F. Supp. 2d 101, 105 (D.D.C. 2013). Here, Defendant Fidelity is headquartered in Massachusetts. Thus, because "a defendant" is located in the District of Massachusetts venue is proper there as to all the Defendants in the instant suit under ERISA's broad venue provisions. 29 U.S.C. § 1132(e)(2) (providing venue where "a defendant resides or can be found"); *see also Varsic*, 607 F.2d at 248 (Congress "clearly struck the balance in favor of liberal venue").

Moreover, at least some of Fidelity's decisions regarding the use of float occurred in Fidelity's Boston office. ECF No. 27-3, Declaration of Francis Bastien ("Bastien Decl.") ¶¶ 6–7 (noting that some personnel and decisionmaking with respect to float occurred in Boston). Venue

8
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

is proper "where the breach took place" and "[a] breach of fiduciary duties . . . [occurs] where the defendants commit or fail to commit the actions that their duties require." *McFarland v. Yegen*, 699 F. Supp. 10, 13 (D.N.H. 1988). Thus, because the alleged breaches of ERISA fiduciary duties against Fidelity, HP, and United depend on Fidelity's decisions concerning float, the alleged breaches at least partially occurred in the District of Massachusetts. As a result, the location of the breach provides another reason why venue is proper in the District of Massachusetts. *See* 29 U.S.C. § 1132(e)(2) (providing venue where "the breach took place").

Accordingly, because personal jurisdiction and venue would be proper, the instant suit could have been brought in the District of Massachusetts.

### 2. Plaintiff's Choice of Forum

Plaintiff opposes Fidelity's Motion to Transfer on the grounds that the Court should respect Plaintiff's choice of venue. Generally, "a plaintiff's choice of forum is accorded great deference in ERISA cases." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997), *opinion amended on denial of reh'g*, 128 F.3d 1305 (9th Cir. 1997), *rev'd on other grounds*, 525 U.S. 432 (1999).

However, this deference is substantially diminished in several circumstances, including where: (1) "the plaintiff's venue choice is not its residence," *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001); (2) the conduct giving rise to the claims occurred in a different forum, *see, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration."); (3) the plaintiff sues on behalf of a putative class, *see id.* ("[W]hen an individual . . . represents a class, the named plaintiff's choice of forum is given less weight."); or (4) plaintiff's choice of forum was plaintiff's second choice, *see, e.g., Glaxo Grp. Ltd. v. Genentech, Inc.*, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010) ("While this Court is not convinced that [plaintiff] engaged in blatant forum shopping, the Northern District of California was not [plaintiff's] first choice of forum and is, therefore, entitled to less deference.").

9
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

All four of these deference-diminishing factors warrant diminished deference for Plaintiffs' choice of forum. The Court addresses each factor in turn.

First, none of the five named plaintiffs in the instant suit reside in the Northern District of California. *See* FAC ¶¶ 20, 21 (Mark Burgess resides in Frisco, Texas; Holger Meyer resides in Helena, Montana; Alan Munns resides in Fort Collins, Colorado; Larry Lopez resides in Northglenn, Colorado; and Rhonda Johnson resides in Compton, California, which is located in the Central District of California).

Second, the Court notes that most of the relevant conduct at issue in the instant suit occurred outside of the Northern District of California. Fidelity has filed a declaration of one of its employees indicating that none of the decisionmaking regarding the use of float occurred in California. Bastien Decl. ¶ 7.

Moreover, Fidelity has filed a declaration of an employee of United that states that all of United's actions as administrator of the United Plan occurred in Chicago, not in California, and that "the Plan has had no dealings with Fidelity personnel based in the State of California." ECF No. 27-1, Declaration of Rainier Villatuya ("Villatuya Decl.") ¶¶ 5–11.

Additionally, Fidelity has filed a declaration of an HP employee that states that, during the relevant class period, "oversight of Plan administration activities occurred in Texas." ECF No. 27-2, Declaration of Martha Sharp ("Sharp Decl.") ¶ 4. However, the declaration does state that "some Plan administration activities occur and have occurred in Palo Alto, California" and that "[t]he employees who negotiated the Plan-related agreements between Fidelity and the Plan are resident in both Texas and California." *Id.* ¶ 6, 8.

However, the Court notes that the claims against HP involve breaches of duty based on a failure to prevent Fidelity's Actions. As a result, the claims against HP are subsidiary in the instant action overall.

Finally, as discussed further below, the class action allegations in the instant case includes a class of all 401(k) plans that used Fidelity as a trustee. *Id.* ¶ 86. That class allegation has no geographic limitation and, thus potentially includes conduct from anywhere in the United States.

10

Thus, although there may be some relevant conduct that occurred in the Northern District of California for the subsidiary claims against HP, it is clear that the majority of the relevant conduct occurred outside of the Northern District of California.

Third, the named plaintiffs bring the instant suit on behalf of two nationwide putative classes. The Float Plans Class involves "[a]ll defined contribution individual account plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), for which Fidelity Management Trust Company or its affiliate served as Trustee and/or recordkeeper." FAC ¶ 86. The second class is the HP and United Plan Participant class, which is a nationwide class for "[a]ll individuals who were participants in either the HP Plan or the UAL Plans while Fidelity Management Trust Company or its affiliate served as Trustee and/or recordkeeper." *Id.* Given the broad, nationwide nature of these two putative classes, Plaintiff's decision to bring suit in the Northern District of California is accorded less weight. *See Helfant v. La. & S. Life Ins. Co.*, 82 F.R.D. 53, 58 (E.D.N.Y. 1979) ("[T]he existence of hundreds of potential plaintiffs considerably weakens plaintiff's claim that his home forum is the most appropriate.").

Finally, the Court finds there to be a likelihood that the Northern District of California is not Plaintiffs' first choice for filing the instant case, and in fact, that Plaintiffs' counsel has engaged in forum shopping. Two lawsuits that are similar to the instant case were previously filed in other districts. The Court first addresses the procedural history of those two lawsuits and then discusses how those cases relate to forum shopping in the instant case.

In *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014), participants in a 401(k) plan similar to the HP Plan and United Plan filed a suit in the Western District of Missouri against their employer, ABB Inc., and Fidelity for Fidelity's use of float. The plaintiffs argued that Fidelity breached its fiduciary duty by transferring float to separate interest-bearing accounts during plan participants' contribution and withdrawal of funds from their 401(k) plan, and failing to pay that interest from the account to the 401(k) plan. *Id.* at 332. After a bench trial, the trial court held that Fidelity breached its fiduciary duty for its misuse of float and entered judgment against Fidelity on March 31, 2012. *Id.*; *Tussey v. ABB, Inc.*, 2012 WL 1113291, at *1, 32–34 (W.D. Mo. Mar. 31,

11
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

2012). On March 19, 2014, the Eighth Circuit reversed and held that no fiduciary duty was violated because the float was not a plan asset. *Tussey*, 746 F.3d at 339–40.

On February 5, 2013, after the trial court's decision in *Tussey*, but before the reversal on appeal, the attorneys representing Plaintiffs in the instant case filed a class action suit in the District of Massachusetts against Fidelity and affiliates of Fidelity. *In re Fidelity ERISA Float Litig.*, D. Mass Case No. 1:13-CV-10222-DJC, ECF No. 1. One of the named plaintiffs, Timothy Kelley, was a former participant in the Hewlett-Packard Company 401(k) Plan, the same HP Plan at issue in the instant case. *Id.* Relying on the factual findings in *Tussey*, the complaint alleged that Fidelity breached its fiduciary duties by placing float in interest-bearing accounts during a plan participant's contribution or withdrawal of funds from 401(k) plans. *Id.* The SAC described a putative class of "[e]mployee benefit plans covered by the Employee Retirement Income Security Act of 1974 subject to Internal Revenue Code §§ 401(a), (k), for which Fidelity has served as trustee or service provider from February 1, 2007 to the present." *Id.* ¶ 47. That class included both the HP Plan and United Plan at issue in the instant suit.

The defendants in *In re Fidelity* filed two motions to dismiss, *id.* ECF Nos. 82, 103, and the court held a hearing on the first of these motions, *id.* ECF No. 99. However, before the district court issued a ruling on the motions, the Eighth Circuit overturned the trial court in *Tussey*. In response, the plaintiffs in *In re Fidelity* amended their complaint twice to only challenge Fidelity's use of float during a plan participant's withdrawal of funds from a 401(k) plan. *Id.* ECF No. 122, Second Amended Complaint ("SAC") ¶ 55. In response, the defendants filed a third motion to dismiss. *Id.* ECF No. 125.

On March 11, 2015, the District of Massachusetts held that float was not a plan asset, and therefore that Fidelity did not breach any duty under ERISA by failing to pay float income to the plans, and that Fidelity had no fiduciary duty with respect to float. *Id.* ECF No. 141. On appeal, the First Circuit affirmed the trial court's decision by finding that float income was not a plan asset on July 13, 2016. *In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 64 (1st Cir. 2016) (Souter, J.).

One month later, on August 18, 2016, Plaintiffs filed the instant case in the Northern

12

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

District of California and are represented by the same counsel that represented the plaintiffs in *In re Fidelity*. In the instant case, Plaintiffs' allegations involve the same float practices at issue in *Tussey* and *In re Fidelity*. Specifically, Plaintiffs allege that Fidelity breached its ERISA duties by misusing "cash assets" during the process of a plan participant contributing or redeeming 401(k) funds. FAC ¶ 1–2. Plaintiffs also bring claims against HP and United based on their failure to prevent Fidelity from misusing float. *Id.* ¶ 75–84. Plaintiffs argue that the instant suit is different from *In re Fidelity* because the instant suit involves "cash assets" rather than float. Transfer Opp'n at 1. However, the FAC itself refers to those cash assets as float. FAC ¶ 2.

Moreover, the Float Plans Class at issue here overlaps significantly with the class at issue in *In re Fidelity*. The *In re Fidelity* class involved all 401(k) plans that used Fidelity as trustee while the Float Plans Class includes all "individual account plans" that used Fidelity as trustee. The *In re Fidelity* putative class thus already included the HP Plan and the United Plan at issue in the instant suit. Indeed, one of the named plaintiffs in the *In re Fidelity* case, Timothy Kelley, was a participant in the HP Plan. Thus, one month after losing a case concerning Fidelity's practices with float in 401(k) plans, Plaintiffs' counsel sought a different forum to find those practices unlawful.

Plaintiffs argue that no forum shopping occurred because the issues in the instant suit are different from the issues in *Tussey* and *In re Fidelity* in two ways. First, Plaintiffs argue that the instant case involves questions concerning whether Fidelity breached a duty by diverting the float to a separate account that it owns while *Tussey* and *In re Fidelity* focused on whether the interest income in that other account was a plan asset that should have been paid to the 401(k) plans. Transfer Opp'n at 1–2. Second, Plaintiffs argue that they make new arguments in the instant suit not at issue in the prior suit that Fidelity never informed plan participants about their use of the float income. *Id.* However, courts in this district have found the presence of forum shopping even where the latter case involved different legal theories where the latter claims arose "out of the same factual predicate" as the prior suit. *See Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007) (finding forum shopping despite a different legal theory in the

13
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

second suit because the claims in the previous suit arose "out of the same factual predicate"). Here, both of Plaintiffs' "new" theories arise out of the same practices of Fidelity at issue in *Tussey* and *In re Fidelity*.

Moreover, both of the "new" theories Plaintiffs assert depend on the issues decided in *Tussey* and *In re Fidelity*. In *Tussey* and *In re Fidelity*, the Eighth Circuit and the First Circuit determined that float was not a plan asset, and as a result Fidelity breached no fiduciary duty by failing to pay the interest income from that float to the 401(k) plans. *Tussey*, 746 F.3d at 339; *In re Fidelity*, 829 F.3d at 59. Plaintiff's claims concerning diversion of the float to a separate account also require that float be a plan asset. *See* Transfer Opp'n at 2 ("[The instant suit] is about the diversion of assets that are clearly *plan assets* by the Trustee for the Plans who then used these assets for its own benefit." (emphasis added)). Accordingly, *Tussey*'s and *In re Fidelity*'s holdings are highly relevant in the instant case. Similarly, Plaintiff's claims concerning Fidelity's failure to disclose its practices are premised on the misuse of "plan assets." *See* FAC ¶ 113 ("Fidelity failed to disclose the nature and extent of its activities in managing the Plans and the Plans' assets."). Thus, Plaintiffs' "new" claims are dependent on issues that were decided in *Tussey* and *In re Fidelity*.

As noted above, Plaintiffs' counsel in the instant case also served as Plaintiffs' counsel in *In re Fidelity*. In the instant case, Plaintiffs' counsel has brought re-packaged claims that are based on the same factual predicate and are dependent on the same legal issues as the claims that were rejected in the First Circuit in *In re Fidelity*. Indeed, Defendant Fidelity was also a defendant in *In re Fidelity*, the putative classes in the two cases significantly overlap, and one of the named plaintiffs in *In re Fidelity* was a former participant in the HP Plan, one of the plans at issue in the instant case. The Court finds that this combination of factors indicates that Plaintiffs' counsel, by filing the instant case in the Northern District of California, has engaged in forum shopping in an attempt to avoid legal precedent in the First Circuit. This practice diminishes any deference owed to Plaintiffs' choice of forum. *See Genentech, Inc.*, 2010 WL 1445666 at *4 (finding that even if a plaintiff has not engaged in forum shopping, the plaintiff's choice of forum deserves little

14

deference if the forum was not the plaintiff's first choice).

Thus, because Plaintiffs do not reside in the Northern District of California, most of the events giving rise to liability occurred outside of the Northern District of California, the instant case involves two putative nationwide classes, and Plaintiffs' counsel has engaged in forum shopping, the Court finds that Plaintiffs' choice of forum is owed minimal deference.

The Court next turns to the balance of convenience of the parties and witnesses and the interest of justice.

### 3. Convenience of the Parties and Witnesses

Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify, and "[t]he convenience of witnesses is often the most important factor in resolving a motion to transfer." *Bunker v. Union Pac. R.R. Co.*, 2006 WL 193856, at *2 (N.D. Cal. Jan. 23, 2006) (citing *A.J. Indus., Inc. v. U.S. Dist. Court*, 503 F.2d 384, 389 (9th Cir. 1974)); *see, e.g.*, *United Consol. Indus., Inc. v. General Motors Corp.*, 343 F. Supp. 476, 477 (E.D. Pa. 1972) (transferring case based, in part, on disruption to business operations and burden of producing witnesses for discovery). The parties dispute whether the convenience of the parties and witnesses favor transfer. The Court discusses the four interests in the instant suit (Fidelity, United, HP, and Plaintiffs) in turn.

First, a transfer would increase convenience for Fidelity and its witnesses. Fidelity has filed a declaration of, Francis Bastien, Senior Vice President of Relationship Management at an affiliate of Fidelity. That declaration states that "none of the Fidelity individuals who have or had any decision-making or operational responsibility related to float processes are, or were, based in California." Bastien Decl. ¶ 6. Indeed, the declaration goes on to state that some of the individuals in charge of the float decisions are located in Boston and that the people responsible for making decisions with respect to the HP Plan are located in New Hampshire and Boston. *Id.* ¶ 8. Thus, because none of Fidelity's potential witnesses are located in California and at least some of those witnesses are located in the District of Massachusetts, a transfer would benefit Fidelity.

15
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

As to United, HP, and Plaintiffs, the Court finds that a transfer would be neutral. With respect to United, Fidelity has filed a declaration of a United employee that states that all relevant witnesses are located in Chicago and none are located in California. Villatuya Decl. ¶¶ 5–11. Thus, a transfer from the Northern District of California to the District of Massachusetts would be neutral. Additionally, United has joined in Fidelity's motion to transfer.

With respect to HP, the Court finds that a transfer would also be neutral. Fidelity has filed a declaration from an HP employee that indicates that individuals in charge of the administration of the HP Plan are residents of Texas and California. Sharp Decl. ¶ 7 ("The employees who maintain the day-to-day relationship with Fidelity reside in both Texas and California."). It is unclear which of these individuals would be called as witnesses and which of them reside in the Northern District of California. Thus, transfer would be neutral because it is unclear which, if any, of the employees relevant to this suit reside in the Northern District of California as opposed to elsewhere in California or Texas. Moreover, to the extent any of HP's employees are witnesses in the instant suit, HP has joined in the motion to transfer and thus is willing to incur any costs involved in litigating in the District of Massachusetts.

Finally, Plaintiffs do not reside in the Northern District of California and, in response to Fidelity's motion, Plaintiffs do not point to any witnesses that Plaintiffs might call in the Northern District of California, or any witness at all. Instead, Plaintiffs argue that the declarations filed in support of Fidelity's motion to transfer should be disregarded because Defendant has not provided specific information on the identities and subject matter of the potential witnesses' testimony. As a result, the Court concludes that transfer would be neutral as to Plaintiffs as well. *See Sensus USA Inc v. Badger Meter Inc.*, 2016 WL 5390300, at *5–6 (N.D. Cal. Sept. 27, 2016) ("However, given the complete lack of information about Plaintiff's witnesses, Defendant's declaration is sufficient to conclude that the convenience of the witnesses favors the Eastern District of Wisconsin over the Northern District of California."). The Court is aware that Plaintiffs' counsel has offices in Arizona and in this district. However, "[j]udges in this District have repeatedly stated that "the location of plaintiff's counsel is not an appropriate factor for the Court to consider

16
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

when deciding a motion to transfer." *Wilson v. Walgreen Co.*, 2011 WL 4345079, at *5 (N.D. Cal. Sept. 14, 2011) (internal citations omitted).

Thus, a transfer would benefit Fidelity and its witnesses, but would be neutral as to the remaining parties and their witnesses. Accordingly, this Court finds that the convenience of the witnesses and parties weighs slightly in favor of transfer.

### 4. Interests of Justice

In evaluating the interest of justice, a court may consider "public interest factors such as court congestion, local interest in deciding local controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Courts also consider other factors such as potential gains in judicial efficiency created by transfer and issues of forum shopping. *Madani v. Shell Oil Co.*, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (finding transfer appropriate largely because the plaintiffs had engaged in forum shopping and the transferee court had experience with the issues in the suit).

The Court first discusses whether a transfer would increase judicial efficiency, then discusses forum shopping, and then turns to whether the other public interest factors such as court congestion, the local interest in deciding local controversies, conflicts of laws, or the burden on citizens weigh in favor of transfer.

Defendants argue that the interests of justice favor transfer because, after transfer, the case could then be decided by Judge Casper, the judge who presided over the *In re Fidelity* case. Although the case, when reassigned, would not necessarily be assigned to Judge Casper initially, the related case procedures for the District of Massachusetts make it likely that the case would be reassigned to her. *Madani*, 2008 WL 268986 at *2 (finding that "in the event of a transfer, the action would almost certainly be reassigned to Judge King under related case procedures"). The District of Massachusetts provide for cases to be related where they involve "similar claims or defenses," or "substantially the same questions of fact and law." D. Mass. Civil L.R. 40.1(G)(1). As discussed above, the claims and legal issues in the instant suit are similar, if not identical, to

17
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

the issues in *In re Fidelity*, which makes it highly likely that the case would be reassigned to Judge Casper.

The assignment of the instant case to Judge Casper would increase judicial efficiency in the adjudication of the case. Three motions to dismiss were briefed before Judge Casper, and she held hearings on two of them. Judge Casper also issued a substantive order on the third motion to dismiss that discussed issues that will likely be dispositive of the claims in the instant suit, i.e., whether float is a plan asset. Thus, Judge Casper is "in the best position to determine substantive issues raised in the present litigation" as well as "downstream issues, including res judicata issues." *Madani*, 2008 WL 268986 at *2; *see also Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *5–6 (N.D. Cal. Oct. 14, 2003) (transfer warranted to district where earlier action had been litigated, to "avoid the risk of conflicting rulings" and to "save judicial resources"). Accordingly, judicial efficiency favors transfer.

Additionally, as discussed above, the Court finds it likely that Plaintiffs' counsel has engaged in forum shopping. Such forum shopping decreases the weight of Plaintiff's choice of forum, as discussed above, and also weighs in favor of transfer. See *Wireless Consumers Alliance*, 2003 WL 22387598 at *6 ("[E]vidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily in the context of [the interests of justice] prong and would often make the transfer of venue proper"); *Madani*, 2008 WL 268986, at *3 (finding forum-shopping where "[t]he same counsel, seeking to represent a nearly identical class, filed a[n] earlier lawsuit premised on the same allegedly unlawful activity in the Central District."). Therefore, Plaintiffs' counsel's attempt to avoid the precedent in a case it litigated just prior to the instant case indicates that Plaintiffs' counsel has engaged in forum shopping. These actions weigh heavily in favor of transfer to the District of Massachusetts.

The Court next turns to the remaining interest of justice factors. With respect to court congestion, Plaintiffs note that the time to trial in the District of Massachusetts, 30.4 months, is approximately 6 months longer than the time to trial in the Northern District of California of 24.6 months. Transfer Opp'n at 9. Plaintiffs also state that the time from filing to disposition in the

18

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

District of Massachusetts, 10.4 months, is about three months longer than in the Northern District of California, 7.4 months. *Id.*

However, these differences have only a minimal effect on the balance in the instant suit. First, court congestion is only a "minor factor" in the transfer analysis and "this factor alone cannot control the overall balance of this Court's decision" on a motion to transfer. *Royal Queentex Enterps. v. Sara Lee Corp.*, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000). Second, courts in this district have held that a difference of a few months in court congestion does not necessarily weigh in favor of transfer. *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 273–74 (C.D. Cal. 1998) (finding a two-month difference insignificant). This result contrasts with cases where transferring provides a clear time advantage for the disposition of a case. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005) (finding a 1 year 8 month difference in time to trial to weigh in favor of transfer from the Southern District of California to the Eastern District of Virginia). The six-month difference is slightly longer than the two month period found insignificant in *Guthy-Renker*. Therefore, the Court concludes that this difference weighs slightly against transfer, but that it "cannot control the overall balance of this Court's decision" to transfer. *Queentex*, 2000 WL 246599 at *8.

With respect to the local interest in the controversy factor, the District of Massachusetts likely has a stronger interest in the instant suit. Unless there is a particular local interest, the district where the "crux" of the case lies is the preferred district. *See Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013) ("[T]he crux of the present case lies not in California, the state where Plaintiff purports to have purchased a falsely advertised product, but in New Jersey, the state where Gerber is headquartered and allegedly issued misrepresentations concerning its probiotic products."). Usually, a particularized local interest does not exist where nationwide class allegations have been brought. *See Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014) ("That [Defendant] is located in the Central District does not mean that the Central District has a significant or unique interest over the Northern District in resolving the nationwide claims at issue in this case."). Here, the crux of the case lies in the District of

19

Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE

Massachusetts, the location where Fidelity is headquartered and the location where relevant decisions were made with respect to Fidelity's float practices. In contrast, the Northern District of California has an interest in ensuring that plans at least partially administered within its district, such as the HP Plan, and its participants are not cheated out of money by a fiduciary. However, none of the named plaintiffs in the instant suit are located in the Northern District of California, and the class allegations involve employees of HP and United throughout the nation, as well as all other 401(k) plans throughout the nation that used Fidelity as trustee. Given the nationwide nature of the claims, and the "crux" of the case existing in the District of Massachusetts, the Court finds that this factor favors transfer.

Overall, the court finds that the balance of convenience and the interest of justice weighs in favor of transfer. The Court only provides minimal deference to Plaintiffs' choice of forum because none of the Plaintiffs reside in this district, most of the conduct at issue in the case occurred outside of this district, the instant suit involves two putative nationwide classes, and Plaintiffs' counsel engaged in forum shopping. Moreover, when balancing the relevant factors under § 1404, the balance weighs in favor of transferring the case. Above, the Court found that the convenience of the parties and witnesses weighs in favor transferring, as does judicial efficiency and concerns over forum shopping. Only one factor, court congestion, weighed against transfer, a factor that "cannot control the overall balance of this Court's decision" to transfer. *Queentex*, 2000 WL 246599 at *8. Thus, the Court concludes that, on balance, transfer is warranted. Accordingly, the Court GRANTS Fidelity's Motion to Transfer Venue.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Fidelity's Motion to Transfer Venue. The Clerk shall transfer this case to the District of Massachusetts.

**IT IS SO ORDERED.**

Dated: February 3, 2017

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

20
Case No. 16-CV-04784-LHK
ORDER GRANTING MOTION TO TRANSFER VENUE